Good morning, Your Honor. It's Russell Marshak for Petitioner Ismael Rodriguez. May it please the Court. Mr. Rodriguez is seeking a determination from this Court that his July 6, 1989 California Health and Safety 11351 conviction is not for a federal controlled substance, thus that he is not eligible for a 10-year suspension of deportation. He's asking the Court for a reversal of the November 20, 2012 decision of the Board of Immigration Appeals, which denied his motion to reopen based upon fundamental or sufficiently significant changes in the law, and a remand, which denied his relief applications, or, at minimum, a remand to the BIA to redetermine whether reopening is justified under the developments in this Court and the Supreme Court since the immigration judge's September 2009 decision. Could you start by explaining why the BIA wasn't correct that this is a development that we outlined in the motion to reopen represented a fundamental or sufficiently significant change in circumstances to justify treating it as a motion to reopen rather than a motion to reconsider? I thought reopen was on new facts and reconsider was on law. Well, reopening can also be on significant or significant changes. And we cited the cases that we think in the motion. Say it again? What's your source for saying that a motion to reopen can be based on a legal change? Well, I did cite several authorities in the – in our brief to the BIA and repeated them in the brief. I'm sorry. My memory is not that good to be able to recite those things off the top of my head. The regulations themselves says new facts, that a motion to reopen is based on new facts. A motion to reconsider would be an error factor law. Correct. But, again, case law permits motions to reopen to be based upon significant or fundamental changes in law. But you can't cite a case on that? I did cite cases. I just don't remember them off the top of my head. I'm sorry. I can point you to the section of my brief where it talks about it. Specifically, page 29 of my opening brief, I cite several BIA cases. Henry XGW, Matter of GD, these are BIA cases. Matter of GL, I also cited a Ninth Circuit case, Lynn V. Holder, another Ninth Circuit case, Escobar V. Holder, and actually two more Ninth Circuit cases, Reynoso, Cisneros, V. Gonzales, and Chavez V. INS. All right. Let's say you're correct that you can reopen for fundamental changes in the law. I'm not sure I understand why it's that fundamental here. And also, I'm not sure that I understand why it isn't limited with the kind of change there was here, to the extent there was any, to a sua sponte motion, reopening by the BIA. Well, we weren't asking for sua sponte. We were asking for reopening based upon fundamental change in law. But I get your point, Your Honor, that the, I'm sorry. I lost track of the question. Can you repeat the question?  Oh, why is it fundamental? Well, what we had maintained throughout this litigation was that both the use of abstracts under the modified categorical approach changed this, at the time the case started. It's been established in the Ninth Circuit for quite a while that use of abstracts is okay for the modified categorical approach. I agree with you. When the case started, it was not permitted. The Snellenberg panel decision came out confirming that, then the Snellenberg en banc decision reversed it. You're right. Then after we had done certain of the briefing in this case before the judge, there was a narrowing of how you could use the abstracts by another Ninth Circuit case. I think it was Fregoso. I cited that also in the brief here. When we filed the motion to reopen itself, there were a couple of other developments, again, that we cited in the brief about, not the use of abstracts per se, but the treatment of the categorical and modified categorical approach had to be done more strictly than the court was treating it. We maintain that those changes are fundamental in treatment, not just in this case, but in all cases, using the categorical and modified categorical approaches. Go ahead. The documents used here, when the issue being cocaine, we have the minute order, which refers to count one. You have the second minute order, and then you have the court report. You actually have, you don't really have abstracts per se. And we know what count one said, so. You know, the count one was not, the complaint or the charging document was never put in the record here. All we have is those two documents, claiming that I characterize them as abstracts. One might be more like a minute order than an abstract, but in either case. Well, okay, let's stop there. Do you think there's a difference between a minute order and an abstract? No, no. I think they're treated fundamentally the same, and I think they're of the fundamental same nature. But what the court has said about this is that those can't be used by themselves. They have to be used in conjunction with a charging document. And where there's ambiguity, if ambiguity establishes that there's doubt, then the- What's the ambiguity? It looked like the disposition of arrest in court action document said HS11351, possession for sale of cocaine. The issue here was, could cocaine be identified by the record? Okay, it always was. We submitted the plea agreement in which he said, I did not have any contraband whatsoever, but a jury may disagree with me. We maintain that what he said by that was that, okay, I'm conceding only that I had a controlled substance under the California law. But it doesn't matter. It doesn't matter if he's got the conviction in it. It says cocaine. It's kind of like a NOLO plea that way, except I guess the district court must have gotten its substantial basis in fact, or rather, the state court, from what the prosecutor said. Again, we don't have the complaint in the record here. We only have those two documents. Well, we have this disposition of arrest in court action document. That's what I'm talking about. Right, an unsigned, undated document. Looks like it was put in by the prosecutor's office. Is that what it means? I thought it was a court document. It looks like a document. As I read the document, it's a form issued by the California Department of Justice. I think it's a form that they use.  Let's, you want to save that time for rebuttal, and we'll hear from the government. Thank you. Good morning, Your Honors. May it please the court, Alexander Lutz for the Attorney General. Your Honors, you, Judge Kleinfeld, touched on the heart of this case just a moment ago when he said that this case is kind of like a NOLO plea. We have a document, we have a number of documents in the record here that show what Mr. Rodriguez was charged with. He was charged with this. Can you tell me that document that I just quoted, this disposition of arrest in court action, is that a prosecutor's document or a court document? Your Honor, I'm not aware of the answer to that question. I don't know whether that's a prosecutor's document or a court document. I can tell you that it looks from the record that it came out of the court's file. I can tell you that it was, it's got a seal on the back of it. It was part of the official record of the case, the criminal proceeding. That would seem right there to give it the indicia of reliability that the courts looked at in Snellenberger and related cases. When you say it has a seal, that just means it came out of the court docket, right? Yes, Your Honor, that's right. But you can put a lot of stuff in a court docket that's not official. It says from the files of the California Department of Justice, Bureau of Criminal Identification and Information. So the seal on the back says it's coming from the Department of Justice's files, not from the court files, if I'm reading that correctly, am I? I'm sure that you're reading it correctly off the page, Your Honor. I'm not sure if I can corroborate the significance of that phrase. But let's just put that document aside for a minute, because even if we do, we've still got a report of an indeterminate sentence in the record here. And that pretty conclusively shows that Mr. Rodriguez was charged in count one with possession for sale of cocaine in violation of California Health and Safety Code, section 11351. Which document are you sending us to? To the report of indeterminate sentence, Your Honors. It's on pages 696 to 697 of the administrative record. Okay, and that's from the court's files? I believe so, Your Honor, yes. Yeah, that's what the certificate shows, yeah. Okay. And I'd note, Your Honors, that in an unpublished decision in 2009 called Castro that we cited in our briefs, this court specifically looked at that precise document, a report of indeterminate sentence, and said that that document is reliable and is an appropriate shepherd document under the en banc opinion of Selenberger. And although that's an unpublished decision, Your Honors, I'd note that the reasoning of it was so persuasive that you've already convinced the Eighth Circuit. The Court of Appeals for the Eighth Circuit in US versus Benitez de Los Santos, 650 Feb 3, 1157, agreed with this court in its unpublished decision in Castro. So you go that route, you don't look at the disposition of arrest or the clerk's minute orders, is that right? You don't need to, in other words. Well, I don't know that we need to, Your Honors, but I think we sure can. Well, the question that the counsel raised was the certified minute order refers to count one, but he said there's really nothing in the record that's clear as to what count one was, a charging document. Well, Your Honors, there is no charging document in the record. There's no complaint, but we don't need one, Your Honors. We don't need one to determine, in this case, what Mr. Rodriguez was charged with and what he pled guilty to, because other documents show that. I'd direct the Court's attention to Quong, a case that Mr. Rodriguez Okay. What other documents show that? Show, I'm sorry, Your Honor, that cocaine specifically was involved? Show that count one was cocaine. Well, Your Honors, the two documents that we – the two documents we have there are the report of indeterminate sentence and the disposition of arrest in court Okay. So what – well, we're back to the bookend documents. So, in other words, the ones in the middle don't have any meaning if they're not linked up with something. Would you agree with that, the two minute orders? Well, How would you know what count one is if we can't look at some document that says what count one is? Well, Your Honor, I'd just like to refine that question a little bit, if I could. No. You can refine it after you answer my question. Okay. I just want to make sure I understand it right. I'm sorry. That's what I meant by refining. It sounds like Your Honor is asking if those documents have no probative value, if they're useless in the absence of these two. I'm not saying – no, I didn't use the word useless. I asked you that whether those documents give you any indication that – we're talking about the minute orders – that there's a plea to cocaine or a charge to cocaine, or whether you need to have an additional document to have count one in You do need to have an additional document to make those documents make sense. Okay. And I apologize if I misunderstood the question. And the additional document, in your view, is either the report of indeterminate sentence, which says POS slash sale cocaine, or the disposition, which Judge Ikuda referred to, that's certified by the Department of Corrections that has the same language. That's correct, Your Honor, yes. If either of those falls off the table, so to speak, the two minute orders also fall off the table. If both of those fall off the table, then the remaining documents wouldn't indicate what the controlled substance was. It looks like the best thing you have here is this report of indeterminate sentence, as you say. Yes, Your Honor. And that uses the word cocaine. Yes, Your Honor. At page 696 to 697, it charges, it says conviction by plea to count one, HS code section 11351. And is that 11351 includes other things, too, right? It does, Your Honor. It does include other substances. But in the descriptive column, it says cocaine. I believe it lists it all in one box, Your Honor. But I don't have the form in front of me right now. Oh, you don't? Not in front of me. It's 696. It's 696. Yes, Your Honor. It says actually coquian. Yes, Your Honor. It does. It's supposed to be cocaine. I would respectfully suggest that that misspelling has no legal effect. I hear you. Your Honor, this Court's case. Can I just turn you back just for a moment to our question of our jurisdiction? So do you agree that our case law and the BIA's case law says that a motion to reconsider can be based or that a motion to reopen can be based on a legal, an alleged legal change? Now, when I looked at the cases cited in the Petitioner's brief, none of them seemed directly on point. But I wanted to hear from you, because this goes to a question of our jurisdiction. If it's an untimely motion to reconsider, then we don't have jurisdiction over this matter. Well, Your Honor, I think if it's an untimely motion to reconsider, the Court reviews the Board's denial of it for abuse of discretion. The Court would look to see if the Board abused its discretion by deeming the motion a motion to reconsider and then denying it as untimely. So I'm not sure I follow, Your Honor, that it's a jurisdictional question. But I would suggest that there's no reason to determine that the Board abused its discretion in deeming this a motion to reconsider and denying it as untimely. So as to the rest of your question, I absolutely agree with you. The Court held in Etruria-Berea and in Cifuentes-Angel, a case in which, Your Honor, Judge McKeown was on the panel, that the Court – that the Board can deem a motion to reopen, a motion to reconsider, if that's what the substance of it is, a case making an argument based on law. Right. It can construe it as it is, but is this a motion to reopen? In other words, is it raising changes in facts? No, Your Honor, it's not. It's only raising changes based on law. In fact, the motion really only raised two cases that had come down from this Court in the intervening time between the immigration judge's decision and the filing of the motion, and those were Kwong and the second opinion in Aguilar-Turcios, which has since been withdrawn. Your Honor, as the Court held in Etruria-Berea, just a quote from that decision, if I could, a motion to reconsider is a request that the Board reexamine its decision in light of additional legal arguments, a change in law, or perhaps an argument or aspect of the case which was overlooked, whereas a motion to reopen is based on new evidence or a change in factual circumstances. So if he had filed a motion to reopen and the Board had not reconstrued it as a motion to reconsider, then the Board could have denied the motion to reopen, correct? I believe so, Your Honor, yes. And then, of course, we might have a jurisdiction issue, but they did recast it as a motion to reconsider. That's correct, Your Honor. They recast it as a motion to reconsider. Which was then untimely, correct, because it has to be brought within 30 days. Yes, Your Honor, that's absolutely correct. The Board looked at this, realized it didn't have new facts, it didn't have declarations, affidavits, evidence attached to the back of it. It had a memorandum of points and authorities that laid out a bunch of new legal arguments, and the Board correctly determined that's a motion to reconsider because it's not alleging any new facts, it's not alleging a change in circumstances. And that's consistent with the Tereribara as well, right? Yes, Your Honor, that's absolutely correct. Your Honors, I see I just have a minute left, so I'd like, if I could, to direct the Court's attention briefly to a couple of cases. Cabin Tack, United States v. Valdivinos-Torres, 704-Fed 3rd, 697, and a 2015 opinion in Ruiz-Vidal v. Lynch at 803-Fed 3rd, 1049. Give us the... Can I ask you to put these... The clerk has a sheet of paper, and I think that the Department of Justice knows that it's a lot easier for us to get these by electronic filing before the argument. Like, I don't know if this Cabin Tack is the in-bank opinion in Cabin Tack or some other opinion, you know, so it doesn't help us in the conversation. So for the future, you might just reference that to people in your office. But meanwhile, she has a very handy little sticky pad that you can fill out after, and then we'll get the citations. I'd be happy to, Your Honor. Those cases weren't cited in your brief? These are different cases than what were cited in your brief that you're now mentioning to us? The second two of the three cases I just cited, I don't believe were cited in the brief, but they expand on points that were made in the brief. The first decision, Cabin Tack, has been repeatedly cited by Mr. Rodriguez himself, and I believe was also cited in Respondent's brief. And the only reason I raise these cases, just briefly because I see them over time, is that they conclusively put to rest Mr. Rodriguez's central argument that his plea statement that he did not possess contraband for sale, his argument is that that contradicts the documents in the record that clearly show he was charged in Count 1 with possession for sale of cocaine and pled guilty to Count 1, and thus was convicted by guilty plea with possession for sale of cocaine. In the cases that I just cited, and the citations to which I'll happily provide the court in writing, the court has rejected the argument precisely that Mr. Rodriguez makes. If we can link up a document showing what the substance was to a document showing what the plea was, our analysis is done. And even if a defendant enters something like a West plea where they deny all factual guilt, where they deny any of the facts that were charged, the fact that we can link up what substance was charged with what was pled ends the inquiry. And the kind of plea statement that Mr. Rodriguez put in here does not prevent us from looking at those documents under the modified categorical approach. We have the charging document? We do not have the charging document, Your Honor, but we do have comparable judicial records that show what was charged. Well, they have to be judicially noticeable documents as allowed under Shepard and Snellenberger. And so one of the questions would be, is the Department of Justice document, if that's what, in fact, it is, is that judicially noticeable under those cases? I'm not sure that it is, Your Honor, but the report of indeterminate sentence So you're really hinging on the report of indeterminate sentence. It is, Your Honor, but the courts recognized in the Eighth Circuit and published law has also recognized that that specific document is a recognizable, reviewable, comparable judicial document under Shepard. Thank you. And therefore, we respectfully request that the Court deny the petition for review. Thank you. I just want to bring to the Court's attention one case that was cited, actually, in the government's supplemental brief, U.S. v. Torrey Jimenez. That case, in discussing the modified categorical approach, cited Caban-Tock and the other cases that my counsel here was just talking about, for the proposition that ambiguity in the permissible documents would be a reason to defeat a finding that the immigration consequence applies. And each of the cases that it cites required the complaint or charging document as well as an abstract or another document from the record. All their cases pointed that out. Let's say that all we really do have here that's judicially noticeable and bears on the matter is this report, indeterminate sentence, other sentence choice, issued apparently by the . . . it says it's signature of the clerk, so it seems to be a California Superior Court document. Where's the ambiguity? Your Honor, you really can't tell what the complaint said. Complaints in California can be written very broadly or very narrowly. Well, I know that it says crime, possession, slash sale, cocaine. Okay, but again, this is a one little box summary of we don't know what facts were stated in the complaint or charging document or whether the clerk who filled that out even got it right. And that's the reason that this court is requiring to see the charging document in conjunction with using a document like that. I guess that does get to the crux of it, and I don't remember law saying that we have to see the charging document even if we have a report of it. I commend you to take a look at that USB Taurus and all the cases that it cites because every case that talks about this, and they're all post-Snellenburg cases, talk about that they're looking at an abstract or a minute order, even a judgment in conjunction with the charging document. Thank you. You're welcome. Thank you. I'd like to thank both counsel for your argument this morning. The case of Rodriguez v. Lynch is submitted.
judges: Kleinfeld, McKeown, Ikuta